## No. 13,080.

### JOHN PONSANO vs. ST. CHARLES STREET RAILROAD COMPANY.

#### SYLLABUS.

*Crossing a track.* Those who drive across railroad tracks, unlike those who, as passengers, submit themselves to the control of the carrier and who are not called upon to do more than remain strictly in their places, must exercise some vigilence and they must not assume unnecessary danger. They must guard against the danger of thoughtlessness and pre-occupation and avoid driving recklessly in order to cross in advance of a coming car.

*Defendant's alleged negligence.* The car was moving at a speed customary where there was no necessity to come to a stop. There was not such a crossing as required the stopping of the car nor the moderating of its speed. It appears that the usual alarm was sounded. The negligence charged is not sustained by the circumstances nor by the weight of the testimony of the witnesses who saw the accident.

| 52 | 245 |
| 52 | 813 |
| 52 | 245 |
| 106 | 237 |
| 52 | 245 |
| 114 | 139 |
| 114 | 975 |

A PPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

*J. J. Prowell* (*Benjamin Rice Forman,* of Counsel) for Plaintiff, Appellant.

*Harry H. Hall* for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J. The plaintiff sues for judgment to recover twenty thousand dollars ($20,000) damages for injuries received in a collision between a horse and wagon he was driving and a car of the defendant railroad company. By the effect of the blow struck by the car against plaintiff's wagon, he was thrown from the wagon and struck against

the stone pavement on the street. It was shown at the trial that the injuries were most painful, and that plaintiff will never recover his health. He was partially paralyzed, and the evidence indicated that the base of the skull was permanently affected. He had symptoms of locomotor *attaxia,* which were traced to the wound received in the fall.

The plaintiff charges that the accident was due entirely to the negligence and carelessness of the motorneer of the car of the defendant company, who failed to give proper warning of his car, approaching at a high rate of speed, and who was, instead, at the time, looking back through the car with his head turned in an opposite direction to that in which the car was moving.

Plaintiff avers that when he saw the perilous position in which he was, he did all in his power to avert the collision, and that he was in no way at fault.

The defendant denies that the collision was in any manner caused by the negligence or carelessness of its motorneer. The defendant avers that plaintiff negligently and carelessly drove his wagon upon its tracks without "looking," or "listening," for the approaching car, or taking any of the usual precautions against accidents.

The facts are that plaintiff was driving his wagon (in March, 1898, at about 5:30 P. M.) over defendant's tracks at the intersection of Toulouse and Royal streets. He was sitting in the front of the wagon with his feet on the dash board. The car was going up Royal street toward Canal, and struck plaintiff's spring wagon while it was crossing the track on its way on Toulouse to Bourbon. When the wagon had nearly crossed the track, the car struck the hub of the hind wheel and threw the wagon at right angles to Toulouse street, and in line with Royal street. It was then that plaintiff was thrown down from the wagon. There was another person in the wagon. He was sitting with plaintiff in the front part of the wagon.

The case was tried before the court without a jury. The judgment is against plaintiff, and from it he prosecutes this appeal.

The question arises as to whether it was possible for plaintiff to see the car of the defendant company before his horse stepped on the track, in time to stop and avert the accident.

We have noted that plaintiff and the one with him were in the front of the wagon. We gather from the evidence that it was possible, from that position, to see the car coming at a distance of at least one hundred feet. Ordinarily, one approaching a railroad track driving a

horse in a wagon, at a walk, may check him up and stop when the distance between the two is that number of feet. No reason suggests itself to take this case out of the ordinary rule. It appears that there are nineteen feet measuring from the first line of vision (to the right or left), river corner of Toulouse and Royal streets, to the track. Taking into account the length of the horse and the distance between the horse and the driver, there yet remain a few feet within which a driver, coming to a track, could stop his horse if he saw a car coming in his direction. There is some difference between the testimony of the two, plaintiff and the other man who was with him in the wagon. Plaintiff testified that the car was fully three or four lengths of the car from Toulouse street, coming up, when his horse walked on defendant's track, while the one with him testified that the car was only two lengths distance. They were sitting together, and had equal opportunity to see the car. If it was as the last witness stated, that is, two car lengths, a distance of fifty-two feet, it was not reasonable precaution on the part of the plaintiff to attempt to cross. He appears to us as one who took the chance of crossing, and in the attempt met with the severe accident of which he complains.

It is evident that if plaintiff did not see the car, it was because he did not look in the direction in which it was coming.

As relates to the asserted negligence of the defendant, plaintiff contends, in the first place, that no alarm was given by the motorman by ringing the gong as required. Witnesses testified that the usual alarm was not given. The motorman and the conductor both swear that the alarm was sounded. This evidence is corroborated by witnesses not in the employ of the company who were standing at the time near the place of the accident. This evidence is contradicted by as many, perhaps a larger number of witnesses for the plaintiff. When the evidence is of about equal weight, the authorities agree in holding that the affirmative carries with it a preponderance of proof. Moreover, it remains as a fact in this case that if there was failure to give the usual alarm, the car was plainly in view of plaintiff had he looked down Royal street, from which direction it was coming at the time. Those who undertake to cross railroad tracks in wagons have always been held bound to the exercise of ordinary precaution, and to look in the direction in which cars run, before attempting to cross. Counsel, in their brief, assert that failure of the motorneer to look ahead, and standing with his back to the direction of motion, and head turned

backward talking to some one in the car, without one hand on the brake and the other on or near the controller, ready to grasp it, is gross negligence. In this we readily agree. A service much less improper would be gross negligence, but the weight of the testimony in this case does not sustain these charges.

We have noted that this accident occurred early in March, in the evening, when the front doors of street cars are kept closed. One of the witnesses testified that it was cold, rendering it very difficult to prove that one in charge as motorneer was engaged in conversation with the conductor, or with some one else in the car. The evidence to that end would have to be clear and conclusive, and not contradicted by surrounding circumstances and the testimony of witnesses.

As relates to the brakes and the absence of all attention to them, and the other acts of negligence charged by plaintiff, the judge of the District Court, who heard and saw the witnesses, did not conclude that they were supported by proof enough to sustain them.

We have read the testimony of the witnesses without finding that his conclusion regarding these charges is not correct. The motoneer and the conductor were old employees of the company, trained to their work, who, in an intelligent manner, referred to the rules and regulations by which they are always controlled and which, to one accustomed to them, are more easily complied with than disregarded and . violated.

The fact also that the car, after the collision, was stopped within the usual distance allowed for the stopping of a car is a corroborating circumstance.

We do not understand that there was any necessity to come to a stop at the place of the accident. Two streets intersected, but there was no crossing of another railroad at that point. Had we found that the conduct of defendant's servant was wanton, wilful, or negligent, we would have held that defendant was responsible, without regard to whether plaintiff was cautious or not. It is not evident that the speed of the car was greater than usual.

For these reasons it is ordered, adjudged and decreed, that the judgment appealed from is affirmed.